Michael L. McLaughlin, pro per
c/o Wildwood Pretrial Facility
5 Chugach Ave., Bldg. # 5
Kenai, Alaska    99611-7098

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT KENAI ALASKA

FILED IN THE TRIAL COURTS
STATE OF ALASKA THIRD DISTRICT
AT KENAI ALASKA

AUG 2 7 2015

Clerk of the Trial Courts
By_____
_____Deputy

STATE OF ALASKA,               )
                               )
              Plaintiff;       )
   vs                          )
                               )
MICHAEL L.  McLAUGHLIN,        )
                               )
              Defendant.       )
                               )
                               )
_____)    Case No. # 3KN-15-688  Cr.,

## VRA CERTIFICATION

I CERTIFY  that this document and its attachments  does not  contain; (1) the
name of a victim of a sexual offense listed in  A.S. 12.61.140, or (2) a residence
or business address or telephone number of a victim of, or a witness to, any other
offense unless it is the address used to indentify  the place of the crime  or  is
an address or telephone number in a transcript of a court proceeding, a disclosure
of which was authorized by the court.

## MOTION TO DISMISS THE INDICTMENT

COMES NOW  the defendant,  Michael L.  McLaughlin, appearing  In Properia

Persona and by authority of Criminal Rule 12(b), to now seek  a dismissal  of  the

indictment for cause.  A memorandum of law which sets forth the basis and  grounds

for this request appears as an attachment for the convenience of this court.

SUBMITTED this the __24TH__ of __AUGUST__ , 2015.

_____
Michael L.  McLaughlin
In Properia Persona
Defendant

I CERTIFY that a true and correct
copy of this pleading and all its
attachments was served by mail to
AMANDA BROWNING - KDAO    on
this the 24TH of August  , 2015.
_____
Michael L. McLaughlin, pro per

HARD COPY VIA COURIER
~mj Mchll 8/24/15

UPON INFORMATION AND BELIEF
UNSIGNED "MEMORANDUM OF FACT
AND LAW..." SERVED BY FAX TO
KDAO ON 8/21/15 @ 8:00 PM
~michl l Mchll
8/24/15

Exhibit I-1

Court's

Michael L. McLaughlin, pro per
c/o Wildwood Pretrial Facility
5 Chugach Ave., Bldg. # 5
Kenai, Alaska    99611-7098

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT KENAI ALASKA

STATE OF ALASKA,                    )
                                    )
              Plaintiff;            )
                                    )
    vs                              )
                                    )
MICHAEL L. McLAUGHLIN,              )
                                    )
              Defendant.            )
                                    )
_____)

FILED IN THE TRIAL COURTS
STATE OF ALASKA THIRD DISTRICT
AT KENAI ALASKA

AUG 2 7 2015

Clerk of the Trial Courts
By_____
                    Deputy

Case No. #  3KN-15-688  Cr.,

## AFFIDAVIT IN SUPPORT OF A MOTION TO DISMISS

COMES NOW the defendant, Michael L. McLaughlin, appearing In Properia Persona to hereby SWEAR and AFFIRM that;

1) I am the defendant in the above captioned action who does now come seeking a dismissal of Count II as it is alleged in the indictment and complaint.

2) That I bring this motion seeking dismissal for cause and in a good faith effort to advance this litigation on the merits so as to avoid any undue prejudice, hardship, or unnecessary delay.

3) That I certify that the factual averments made within this pleading seeking a dismissal of Count II are true and correct to the best of my knowledge, belief, or recollection of any event or circumstance depicted herein.

FURTHER YOUR AFFIANT SAYETH NAUGHT !!!!!!!

SWORN TO this the _13TH_ of _August_, 2015.

_____
Michael L. McLaughlin
In Properia Persona
Affiant

SUBSCRIBED and SWORN before me this the __13__ of _August_, 2015
at or near Kenai, Alaska.

_____
Notary Public/State of Alaska

_With Office_
Commission expiration

OFFICIAL SEAL
Matthew Zeek
Notary Public - State of Alaska
My Commission Expires With Office

"Exhibit I-2"

Michael L. McLaughlin, pro per
c/o Wildwood Pretrial Facility
5 Chugach Ave., Bldg. # 5
Kenai, Alaska    99611-7098

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT KENAI ALASKA

STATE OF ALASKA,                    )
                                    )
            Plaintiff;              )
                                    )
    vs                              )
                                    )
MICHAEL L.  McLAUGHLIN,             )
                                    )
            Defendant.              )
                                    )
                                    )
_____)

FILED IN THE TRIAL COURT
STATE OF ALASKA THIRD DISTRICT
AT KENAI ALASKA

AUG 2 7 2015

Clerk of the Trial Courts
By_____Deputy

Case No. # 3KN-15-688  Cr.,

## VRA CERTIFICATION

I CERTIFY  that this document and its attachments  does not  contain; (1) the
name of a victim of a sexual offense listed in  A.S. 12.61.140, or (2) a residence
or business address or telephone number of a victim of, or a witness to, any other
offense unless it is the address used to identify the place of the crime  or it is
an address or telephone number in a transcript of a court proceeding, a disclosure
of which was authorized by the court.

## MEMORANDUM OF FACT AND LAW IN SUPPORT OF
## DEFENDANT McLAUGHLIN'S MOTION TO DISMISS COUNT II

COMES NOW the defendant,  Michael L. McLaughlin,  appearing In Properia
Persona and by authority of Criminal Rule 12(b)(2),  to now offer a memorandum of
fact and law is support of his motion seeking dismissal of Count II of the present
indictment dated May 29, 2015.  This pleading comes as timely, in accordance with
Criminal Rule 42(b), and the pretrial order of this court.

## FACTUAL BASIS AND BACKGROUND

The defense now comes seeking dismissal of Count II of the indictment  which
alleges a violation of A.S. 11.46.510(a)(1), to wit; Forgery in  the  First Degree.
Mclaughlin brings this motion first contending that; (1) prosecutors presenting the
case to the grand jury failed to instruct that investigative body as to applicable
law regarding the offense charged, and (2) they failed  to  present exculpatory
evidence of which they had been made aware prior to presentment of this case to the

"Exhibit I-3"

1

grand jury. See; Letter which was mailed to both this court and the Kenai District Attorney's Office on or about May 18, 2015 -- State v McLaughlin, 3KN-15-688 Cr.

Additionally, McLaughlin contends that the indictment is; facially defective where it fails to set forth every element of the offense charged, is vague and overly broad thus does not meet the notice requirements which would satisfy due process and applicable law, and finally, that it is the product of prosecutorially created bias; all of which violates the Fifth and Fourteenth Amendments to the United States Constitution (and their state corollaries) which work to set up the grand jury right and afford the accused due process of law; Article I § 7 and Article I § 8 of the Constitution of Alaska.

This action stems from an arrest made by the Kenai police on or about May 14, 2015 in Kenai, Alaska. Police were initially called when, it is alleged, that your defendant provided a "hot" urine specimen while he was a participant in the 24/7 program as part of his conditions of release in State v McLaughlin, 3KN-15-630 Cr. It was during the course of what the arresting officer first characterized as an inventory search[1] and later as a search incident to arrest [G.J. 9:33:52-9:34:30], that he, Kenai Police Officer Charles Lee, discovered what has been identified as state's exhibit one. [G.J. 9:34:45-9:35:40] (Exhibits B)

At the jail Officer Lee asked McLaughlin about what he apparently believed to be a "counterfeit" or forged $100.00 bill. (Exhibit C) Thinking nothing of the matter McLaughlin not only admitted possession but told Officer Lee that he had considered the article nothing more than a "novelty item" [G.J. 9:36:43--9:37:02] (Exhibit A) However, when the questions kept coming and it became apparent that Officer Lee was engaged in some sort of a criminal investigation, McLaughlin then indicated that he would not be answering any further questions at that time.

Upon information and belief, this custodial interrogation was not preserved

---------------------

1) See; Exhibit A

"Exhibit I-4"

or electronically recorded as required by Alaska law.[2] Nor was McLaughlin advised of his right to remain silent or to consult with counsel prior to an interrogation in this context as is required by both state and federal law.[3]

Then in the wee hours of the following morning, a second officer believed to be Kenai Police Officer Trevor Miller, came to the jail and sought to seize the article in issue after he had obtained a warrant to do so. (Exhibit C) Officer Miller also expressed a wish to question McLaughlin and likewise attempted to do so without the benefit of offering any *Miranda* advisement or, to the best of the undersigned's knowledge, attempting to comply with the state law requirement that custodial interrogations held at a place of detention must be recorded and preserved.

What Officer Miller did attempt to do was deceive McLaughlin by stating that he (McLaughlin) was not the subject of a criminal investigation. That he (Miller) only wanted to know where McLaughlin had obtained the article in question. When McLaughlin once again refused to answer any of the officer's questions, Officer Miller said, "...[w]ell I guess I am just going to have to charge you..." Upon information and belief, the government is, and was at the time, in possession of information which demonstrates that they know McLaughlin was not involved in any of the criminal acts alleged.

The following day McLaughlin was taken before Magistrate Fallon upon the information initially filed in this case. (Exhibit A) After a perusal of that document and certain provisions of state law the defense believed to be applicable to the instant set of facts, McLaughlin authored a letter on or about May 18th of this year wherein he made the state aware of the fact(s) that; (1) he had been in state custody at the Wildwood Pretrial Facility during a period of time (February 2015) in which items, alleged to be similar to the article seized from him, were apparently used by parties unknown to the defense to commit one or more fruadulent

----------------------

2) <u>Stephan v State</u>, 711 P.2d 1156, 1162 (Ak 1985)

3) <u>Miranda v Arizona</u>, 384 U.S. 436, 460-63; 86 S.Ct 1602; 16 L.Ed.2d 694 (1966)

EXHIBIT L-1

acts within the Kenai/Soldotna area, and (2) that he was requesting that the grand jury be informed of his wish to testify at that proceeding as is allowed by state law.[4]

A copy of that correspondence was lodged with this court at that time as well so as to document the date of mailing, and the date of receipt at an address in the same delivery area as the Kenai District Attorney's Office. Thus there can be no dispute as to whether the request _ to testify was made, and that it was made before the next grand jury term (Friday May 22, 2015), for the purposes of now determining this motion. On Tuesday May 26, 2015 McLaughlin next appeared in this case before Magistrate Wells and, upon learning that no indictment had been obtained by the state on the forgery allegation, the defense sought and obtained a dismissal of Count II in accordance with the provisions of Criminal Rule 5(e).

Subsequent to these events prosecutors did bring the matter before the grand jury. This occurred the following Friday, May 29, 2015, and McLaughlin was held over to answer before the superior court upon an indictment which presently stands before this court. McLaughlin was not granted his request to testify before the grand jury at that time. However, the court will initially note that the present indictment is fatally defective on its face where it fails to allege every element of the offense charged.[5] (Exhibit D) That the language of the indictment does not even track the full text of the statute, nor does it contain any reference to an "...intent to defraud..." which is an essential element of the offense of forgery in any degree.[6] See and compare A.S. 11.46.500(a) and A.S. 11.46.51(a).

--------------------

4) <u>Cameron v State</u>, 171 P.3d 1154, 1159 & n.34 (Alaska 2007)

5) <u>United States v Du Bo</u>, 186 F.3d 1177, 1180 (9th Cir 1999)(An indictment which lacks the necessary allegations of criminal intent fails to allege an offense and if terminally defective on its face)

6) <u>Morrison v State</u>, 469 P.2d 125, 125-26 & 130 n.23 (Alaska 1970)

EXHIBIT I-6

- 4 -

It was not until a whole month later, and well after the state had obtained the present indictment on May 29, 2015, that the Kenai District Attorney's Office applied for a subpoena to make it appear that they were attempting to comply with state law by giving McLaughlin an opportunity to appear before the grand jury in this case. (Exhibit E) In this regard the court should be made aware of two things pertaining to this ruse.

First, the District Attorney's Office never actually attempted to contact the defense who found out about the subpoena through a fortuitous means. Second, the court may also wish to take note that the date of actual issuance of that subpoena falls on the very same day that the grand jury was allegedly to have reconvened in regards to this case. (Exhibit E) Clearly, this was simply just another ruse by government officials in an attempt to advance, and keep as a pending case, a matter where it is clear that they are aware they are attempting to prosecute a completely bogus charge, and it would appear, violate McLaughlin's rights as they are afforded and secured by the Fifth Amendment to the United States Constitution.

In support of this contention, McLaughlin need go no further than to direct this courts attention to the grand jury proceedings which occurred on May 29th and from which the present indictment arose. Here, the prosecution offered to those jurors a varitable buffet of factual scenarios as allegations (at least five) from which the grand jurors could chose even though none were supported by any actual evidence, withheld key information concerning applicable law regarding the crime of forgery itself from these same jurors, and then affirmatively mis-lead them as to an entire element of the offense charged.

It is upon these facts, and the foregoing premise, that Mclaughlin now comes seeking a dismissal with prejudice of Count II of the states cause.

"Exhibit I-7"

## ARGUMENTS AND CONTENTIONS

### PROSECUTORS FAILED TO INSTRUCT ON EVERY ELEMENT OF
### THE OFFENSE CHARGED AND INTENTIONALLY MIS-LEAD THE GRAND JURY

The defense would first argue that the present indictment is terminally and fatally defective because prosecutors making the presentment to the grand jury failed to fully instruct the grand jury as to the law and as to every element of the offense charged. That the indictment is invalid on its face where it does not allege an "...intent to defraud..." as required by A.S. 11.46.500(a)(1) and A.S. 11.46.510(a). Finally, that the state failed in its duty as the grand jury's legal advisor when it took affirmative steps to withhold information from this panel in regards to the element of intent, and thus deprived McLaughlin due process of law.

To support these contentions McLaughlin need only to point out that when embarking on this course of [mis]conduct state prosecutors left a proverbial trial of evidentary "bread crumbs" that a blind man could follow. This trial begins upon the very face of the indictment (Exhibit D) which, as this court will quickly take note, not only fails to allege the culpable mental state of the offense initially charged in the information (Exhibit A), but also fails to allege any offense at all. Point of undispuable fact; the mere possession of an article such as it is alleged to have been possessed by Mclaughlin on May 14, 2015, in and by itself, is not even a criminal act under Alaska law, A.S. 11.46.500 -- A.S. 11.46.580.

To illustrate his point McLaughlin need only to turn to the interpretative case law surrounding the forgery statutes themselves. First, to point out that the crime of forgery in any degree is comprised of three essential elements; (1) the false making, possession, or utterance of some written instrument, (2) an intent to defraud, and (3) an instrument capable of committing fruad, Morrison v State, 469 P.2d 125, 130 & n.23 (Alaska 1970); Davis v State, 2011 Alas App LEXIS 112 [*5], citing; A.S. 11.46.505(a) and A.S. 11.46.510(a).

Additionally, also to indicate that it is a firmly established premise in

"Exhibit I-8"

both statutory and common law that the crime of forgery not only required proof of an "...intent to defraud..." as an essential element of the crime, <u>Morrison</u>, 469 P.2d at 125-26, but that it also falls into the class of offenses known as crimes of specific intent, <u>id</u>. See also; <u>Kimoktoak v State</u>, 584 P.2d 25, 33 (Alaska 1978) (When the definition of an offense refers to the defendant's intent to do some further act or achieve some additional consequence the crime is defined as one of specific intent).

Here the court will first note that nowhere within the confines of the written instrument which was ratified by the grand jury does it allege that McLaughlin had acted with the necessary criminal intent, to wit; an "...intent to defraud..." as is required by <u>A.S. 11.46.510(a)</u>. Accordingly, not only does the indictment fail to allege the offense charged, it fails to allege any crime at all, <u>United States vs Du Bo</u>, 186 F.3d 1177, 1180 (9th Cir 1999), citing; <u>United States v Carll</u>, 105 U.S. 611, 613; 26 L.Ed 1135 (1881)(Such an indictment fails to charge the defendant with a crime).

True, the modern concepts of pleading in criminal cases and the provisions of <u>Criminal Rule 7(c)</u> itself dictate that, "...[n]o indictment is insufficient....by reason of defect or imperfection in a matter of form in the indictment..." which does not tend to prejudice the substantial rights of the accused. However, the complete failure to charge an entire element of the offense is by no means a mere technicality, <u>Du Bo</u>, <u>id</u>., citing; <u>United States v King</u>, 587 F.2d 956, 963 (9th Cir 1978), but is a "...matter of substance..." because a completely missing element leaves nothing for the petit jury to ratify, <u>Du Bo</u>, 186 F.3d at 1180.

The state may argue that such a defect can be cured by an amendment to the indictment as authorized by <u>Criminal Rule 7(e)</u>. Indeed, this statement would be true enough if that were the only defect in the grand jury proceedings giving rise to this case. However, it is not, and the trail left by state proscutors next

"EXHIBIT I-9"

leads to the fact that the grand jury, while being charged with its instructions as to the applicable law in the case, was not advised as to the element of intent in any form. [G.J. 9:27;39-9:31:15] Not even with something as simple and perfunctory as a reading of the statutory definition of "intentionally" as it is set forth within the provisions of A.S. 11.81.900(a)(1).

However, there are as yet three more telling circumstance which McLaughlin argues _ ` indicate that these defects were no mere oversight, but were a product of a willful and intentional set of choices made by state prosecutors who sought to proceed knowing that the government did not have sufficient evidence to allege, much less prove, that McLaughlin had in fact committed a criminal act.

The first of these appears upon the face of the indictment itself, a document which was read to the grand jury and, as already indicated, makes no mention of intent, intent to defraud, or any other related matter. [G.J. 9:22:05] Obviously, this is a solid piece of circumstantial evidence which lends strong support to the defense's contention that this conduct was premeditated and directed at obtaining an indictment without sufficient evidence to support probable cause. The second of these occurs when Ms. Browning is reading the definitions of the offense to the grand jury. [G.J. 9:27;39-9:28:25]

Here, Ms. Browning first reads the provisions of A.S. 11.46.500(a)(1) word for word flawlessly and without a hitch. [G.J. 9:27;39-9:27:56] There is no scratchy voice, no cough, no sniffles, yawns or sneezes. Then she begins to read from the predicate statute A.S. 11.46.510(a) wherein the element of intent is set forth and, coming upon the portion of these provisions which state "...intent to defraud..," she inexplicably stops, allows a full sixteen (16) seconds to lapse while she is apparently considering something, then simply re-starts the reading with briskness and clarity. This, for all appearances, a conscious recognition of error and an equally conscious decision to continue on, a "fruedian slip" if you will.

"Exhibit I-10"

Admittedly, these circumstantial pieces of evidence appearing in the record as enumerated thus far; the flawed written instrument and its reading to the grand jury, the failure to instruct upon the element of intent, the "fruedian slip" while she was reading a statute which defines the offense, are somewhat speculative. However, what occurred next, towards the end of the grand jury proceeding when the jurors were seeking guidance and instruction concerning what actually made the accused guilty of the crime that was being alleged, leaves little doubt that either; A) Ms Browning lacks a complete understanding of the fundamental concepts of culpability in criminal law, or B) that she willfully and intentionally withheld information from the grand jury panel in an attempt to obtain an indictment when she knew that she had no basis in fact or law for doing so.

The court will note the following exchange which occurs in the record at or near 9:37:40 right after Ms Browning's first attempts to submit the case to the jurors for deliberations;

(Unidentified female juror) I'm sorry...I should have talked to you sooner... is it illegal to have possession of a counterfeit bill?

Ms. Browning; So the law reads...let me read that section for you one more time...a person commits the crime of forgery in the first degree if the person.... ummm violates 11.46.410 (sic)....and the written instrument purports to be a part of an issue of money, securities, postage, revenue stamps, or other valuable instruments issued by the government or governmental agency...and 11.46.510...ummm ...is a person who commits the crime of forgery in the third degree is....if with intent to defraud, the person knowingly possesses a forged instrument...**so knowing possession**. (Emphasis added)

(Unidentified male juror) What about ahhh....in the first degree, 500(a)(1), how does that read?

Ms. Browning; (Re-reads A.S. 11.46.500(a)(1) correctly) "EXHIBIT I-11"

(Same male juror)  So if he knowingly possesses it then he is guilty?

Ms. Browning; Yes,....knowingly possesses money...

[G.J. 9:37:40-9:39:07]  Then, yet another fifteen (15) second period of silence and contemplation, this time by the jurors, a fact which speaks volumes concerning how they received this rather in-direct and mis-leading answer to their inquiries.

Under Alaska law a grand jury proceeding is a fairly straight forward affair. A prosecutor prepares the indictment and then he  or she  presents the evidence in support of the indictment to the grand jury through the examination of witnesses, Criminal Rule 6(i).  During these proceedings the prosecutor  acts as  the  grand jury's legal advisor,  advising the panel on both the applicable law and answering any legal questions that the grand jurors may have, Cameron v State, 171 P.3d 1154, 1157-58 (Alaska 2007); Coleman v State, 553 P.2d 40, 47-48 (Alaska 1976)(It is the prosecutors function to prepare indictments, present evidence thereon, and advise the grand jury).

It has been noted that the modern prosecutor  in performing  this  function plays two sometimes conflicting roles.  As an officer of the state, it is the duty of  a prosecutor to be an advocate for the government exerting their best efforts to successfully prosecute those who violate the law.   On the other hand,  as  an officer of the court, they are required to act as a grand jury's 'legal  advisor, "...to aid, but not interfere, in its determination of guilt...," Coleman, supra. As so succinctly put by Justice Sutherland of the United States Supreme Court about a century ago, a prosecutor "...may strike hard blows, [but] he is not at liberty to strike foul  ones...," Berger v United States, 295 U.S. 78, 88: 55 S.Ct 629; 79 L.Ed 1314 (1935).

Unfortunately, since that time a vast body of law has developed which exists to remind us that a prosecutor may not circumvent procedural safegaurds by using over-reaching conduct  that deprives the grand jury  of its autonomous and unbiased

"EXHIBIT I-12"

- 10 -

judgment, <u>United States v Al Mudarris</u>, 695 F.2d 1182, 1185 (9th Cir 1983). That limits must be set upon the manipulation of grand jurors by over-zealous prosecutors to ensure the grand jury remains as a shield against arbitrary accusations and unjust prosecutions, and to prevent the grand jury from becoming merely another "...administrative arm of the District Attorney's Office..," <u>State v Ceiffels</u>, 554 P.2d 460, 465 (Alaska 1976). That proper deference be given to its status as an independent legal body, <u>American Bar Ass'n Standards for Criminal Justice</u>, Pros'tr and Defense Function, 3-3.5(a) at 63 (3rd Ed 1993).

True, modern concepts of the grand jury fuction hold that an idictment that is returned by a legally constituted and unbiased grand jury, like a information drawn up by the prosecutor, if valid on its face, is enough to call for a trial on the merits, <u>Costello v United States</u>, 350 U.S. 359, 363: 76 S.Ct 40; 100 L.Ed.2d 397 (1956). The court in <u>Costello</u> concluded the the provisions of the <u>Fifth Amendment</u> itself requires nothing more, <u>id</u>.

However, more than one court has also concluded that the Due Press Clause of the <u>Fourteenth Amendment</u> requires the states, once having resorted to the grand jury procedure, to furnish an unbiased grand jury, <u>Beck v United States</u>, 369 U.S. 541, 546; 82 S.Ct 955; 8 L.Ed.2d 98 (1962); <u>State v Joao</u>, 491 P.2d 189, 1091 (Haw 1971)(The due process clause of the Fourteenth Amendment is implicated and protects the requirement that the grand jury be unbiased); <u>State v Good</u>, 460 12d 662, 664 (Az App 1969)(A prosecutor must refrain from conducting themselves, i act or in deed, in such a manner as to invade upon the grand jury's province or which would tend to influence its actions); <u>Coleman</u>, supra., at 47-48.

Indeed, it is well settled that a prosecutor should not make statements or arguments in an effort to influence grand jury action in a manner which would be impermissible before the petit jury, <u>Anothony v State</u>, 521 P.2d 486, 96 & n.37 (Alaska 1974). That a court has a duty to act when the actions of a prosecutor have

"Exhibit I-13"

so subverted the grand jury as to have compromised the integrity of the judicial process or "...significantly impaired [the grand jury's] ability to excercise its independent judgment..," Al Mudarris, 695 F.2d at 1182. After all, preservation of the grand jury's protective function is a means to "...insure fair and effective law enforcement..." as well, United States v Calandra, 414 U.S. 338, 343; 94 S.Ct 613; 38 L.Ed.2d 561 (1974).

In this instance there can be no disputing that Ms. Browning's conduct before the grand jury invaded upon its ability to act as an independent investigative body. It is of no consequence whether the conduct was, as it appears, intentional; or whether it was simply an extremely unfortunate and unlikely set of coincidences the mathimatical expression of odds on which would leave one believing that he was in an astronomy class. In either event, the result is the same, that there were at least two grand jurors which were left with an erroneous impression, that they were lead to believe that mere possession of a bogus article which "...purports to be money..." constitutes forgery in the first degree when, in fact, it would not even be a crime under Alaska law, A.S. 11.46.500 -- A.S. 11.56.580.

In Joao the Supreme Court of Hawaii set forth a test which it believed a trial court could assess and measure prejudicial prosecutorial conduct which may have had a "...tendency to prejudice..." the grand jury when it said;

> "...A tendency to prejudice may be presumed when, in
> presenting a case to the grand jury, the trial court
> finds that the prosecutor or his deputies have engaged
> in conduct that will invade the province of the grand
> jury or tends to induce action other than that which
> the jurors in their uninfluenced judgment would deem
> warranted on the evidence fairly presented before them"

Joao, 491 P.2d at 1090. In Joao, the dispute centered around prosecutorial witness vouchering.

In Hansen v State, 845 P.2d 449 (Ak App 1993) our own court of appeals applied a similar test for assessing prejudice in a circumstance where the facts of the

"Exhibit I-14"

- 12 -

case were misrepresented to the grand jury. In that matter, the court held that the question was whether, if the grand jury had heard an accurate account of the evidence, would it have affected the grand jury's decision to indict, id., at 457. See also; Alex v State, 127 P.3d 847, 852 (Ak App 2006)(Using a similar analytical method to assess prejudice when an erroneous statement of law was given to the petit jury in a flawed jury instruction).

Here, McLaughlin is on fairly solid ground when he contends that the grand jury in this case was, not only improperly instructed as to the law, but that this circumstance had a clear influence on at least some of the jurors. The truth is we may never know whether, had they been instructed properly, they would still have been willing to indict upon such a scant factual record. In any event, such second guessing in the absence of all but the clearest of evidentary scenarios is impermissible anyhow, Du Bo, 186 P.3d at 1179-80; United States v Ward, 747 F.3d 1184, 1189 (9th Cir 2004)(It is the exclusive perrogative of the grand jury to determine the charges and neither the prosecutor nor a judge can change a charging part of the indictment once the grand jury is done).

In fact, when faced with a similar post-trial circumstance the Du Bo court reversed the conviction noting that to do otherwise would be to by pass the grand jury altogether. Indeed, under such circumstances, to allow a prosecutor or court to make a subsequent guess as to what was on the minds of the grand jury at the time they returned the indictment would be to deprive the accused of the basic protections that the grand jury was designed to serve because a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him, United States v Keith, 605 F.2d 462, 464 (9th Cir 1979), citing; United States v Russell, 369 U.S. 749, 770; 82 S.Ct 1038; 8 L.Ed 2d 240 (1962).

Alaska law is in complete accord; Adams v State, 598 P.2d 503, 510 (Alaska

"Exhibit Ib"

1979)(If we were to find that a trial court could validate and otherwise invalid indictment, the right to indictment by a grand jury would become a nullity and the grand jury would cease to operate as a check upon the district attorney's power to initiate prosecution). In fact, the Alaska Supreme Court has consistently held that courts should not hesitate to reverse a conviction when a substantial flaw in the underlying indictment is found regardless of the stregth of the evidence against the accused or the fairness of the trial leading up to the conviction, <u>Atchak v State</u>, 640 P.2d 131, 151 (Alaska App 1981); <u>Keith v State</u>, 612 P.2d 977, 980-81 (Alaska 1980); <u>Taggard v State</u>, 500 P.2d 238, 243 (Alaska 1972). As far as the defense is concerned, now that he has made a timely objection to the foregoing procedural and substantive deficiencies, Mclaughlin has now qualms about proceeding on to trial.

Clearly, the indictment presently before this court must be dismissed not only because it fails to allege an offense, but because its underpinnings are likewise seriously flawed. That a trial can not be had because the grand jury was never given the opportunity to consider every element of the offense charged, <u>Tallent v State</u>, 951 P.2d 857, 861 (Ak App 1997)(A defendant is entitled to have the grand jury and the petit jury decide on all elements of the offense charged).

Additionally, as the defense will now show, the indictment must be dismissed with prejudice where prosecutors failed to present exculpatory evidence to the grand jury which, not only where they made aware before their presentment, but also because that exculpatory evidence demonstrates that McLaughlin could not have possibly committed the offense charged.

EXHIBIT I-16

## INADEQUATE NOTICE, EXCULPATORY EVIDENCE AND THE
## APPLICATION OF FIFTH AMENDMENT PRIVILEGE TO CAMERON vs STATE

Mclaughlin would next argue that prosecutors presenting this case to the grand jury failed to present exculpatory evidence to the grand jury, the existence of which they were made aware prior to their first opportunity to go before the grand jury in this case. That the defense provided irrefutable alibi evidence to state prosecutors (Exhibit F) based upon those allegations found by the defense in the information filed by Officer Lee (Exhibit A), and requested that the grand jury be informed of this information[7] and his wish to testify as allowed by state case law.[8] That the state then used a procedural ruse to evade compliance with Cameron while attempting to infringe upon McLaughlin's Fifth Amendment privilege,[9] and in the process, denied him due process of law.

In bringing this argument Mclaughlin would first direct the court's attention to the probable cause statement concerning the forgery charge which apeears as Exhibit A-2. It was upon these official statements made by the arresting officer concerning the dates and places pertaining to the commission of the crimes alleged that the defense made a tactical decision to waive privilege and seek to be heard by the grand jury. It was this set of facts, and the fact that McLaughlin was in possession of certain alibi evidence (Exhibit F) concerning the allegation that he may have been involved in certain fraudulent acts in early 2015 as is alleged in the information (Exhibit A) which formed the basis of that decision. A knowing, voluntary and intelligent waiver of a known fundamental right afforded by both Article I § 9 and the Fifth Amendment to the United States Constitution.

Ignoring the letter, the state obtained an indictment on or about May 29, 2015

------------------------

7) See; Letter/May 18, 2015 -- Appearing within the court file after being lodged with the court in State v Mclaughlin, 3KN-15-688 Cr.

8) Cameron v State, 171 P.3d 1154, 1159 n.34 (Alaska 2007)

9) See also; Article I § 9, Constitution of Alaska.

Exhibit I-17

without having informed the grand jury of McLaughlin's request to testify as would be required by <u>Cameron</u>, or even making the grand jury aware of the alibi evidence McLaughlin had provided and of which prosecutors had been made aware. The records regarding this evidence themselves, readily available to the government (Exhibit F), and where they conclusively demonstrated that McLaughlin was in state custody for much, if not all, of the period indicated within the initial information (and prior to his May 14, 2015 arrest) they could clearly be characterized as "..substantially favorable.., or evidence which, "...tends, in and of itself, to negate the defendant's guilt..," <u>McDonald v State</u>, 872 P.2d 627, 639 (Ak App 1984).

In any event, and any way that one chooses to perceive what occurred next, the state had a duty to present this evidence to the grand jury for the purposes of complying with <u>Criminal Rule 6(q)</u>, <u>Frink v State</u>, 597 P.2d 154, 165 (Alaska 1972). (A requirement that the prosecutor present exculpatory evidence to the grand jury is implicit in the mandates of <u>Criminal Rule 6(q)</u>). Here, it is clear from the record that the state did not comply with either the requirements of <u>Frink</u> as to McLaughlin's alibi evidence, nor did they comply with the notification requirements found in <u>Cameron</u> in this case even though the Alaska Supreme Court has declared them to be obligatory, <u>Cameron</u>, 171 P.3d at 1159.

Having learned that he had been indicted after he had first obtained a <u>Rule 5(e)</u> dismissal, McLaughlin reviewed the grand jury record and learned two things; (1) that the state had not presented the alibi evidence to the grand jury in any form, and (2) that the government's evidentary "response" to their knowledge of the defense's alibi evidence was to simply broaden the allegations so as to diminish the value of the exculpatory offering in issue. Now the allegations spanned an unspecified period over the course of several months and included vague references to the United States "...Secret Service.." and of notes "...being passed as legitimate notes in the lower forty-eight..." [G.J. 9:35:11-9:35:31] These new

Exhibit I-18

allegations also included an alleged act of forgery on the very day of McLaughlin's May 14, 2015 arrest (Exhibit D), a patently absurd allegation given the content of Officer Lee's probable cause statement. (Exhibit A-2)

As intriguing as all these cloak and dagger revelations may have sounded to those hearing the case that day, Mclaughlin is now compelled to bring a little dose of reality back into the discussion by reminding this court that <u>Criminal Rule 6(r)</u> generally requires that evidence presented to the grand jury be admissible at a trial, <u>Taggard v State</u>, 500 P.3d 238, 242 (Alaska 1972). See also <u>Evidence Rule(s)</u> <u>402</u> and <u>403</u>. In any event, because the state had changed its allegations rather dramatically Mclaughlin was obviously well advised to reconsider as to his initial willingness to waive privilege and testify before the grand jury for several reasons, the foremost of which being the lack of proper notice of the allegations which left Mclaughlin to wonder what it is he was being asked to testify too.

It is here Mclaughlin now contends that implicit in the requirements of the <u>Cameron</u> decision, implicit in the requirement that a prosecutor subpoena a defendant if that prosecutor believes that that person possesses exculpatory knowledge and has expressed a willingness to testify, there exists a duty to; first, advise the accused of his rights as they are afforded and secured by both <u>Article I § 9</u> of our state constitution and its federal corollaries found within the <u>Fifth</u> and <u>Sixth</u> <u>Amendments</u>, <u>Galauska v State</u>, 527 P.2d 459, 465 n.8 (Alaska 1974), and second, to provide the accused with sufficient information concerning the allegations being brought against him so that he may effect a waiver that is knowing, voluntary and intelligently given as required by both state and federal law,[10] <u>Quick v State</u>, 599

--------------------

10) <u>Schneckloth v Bustamonte</u>, 412 U.S. 218, 242; 93 S.Ct 2014; 36 L.Ed.2d 854 (1973)(The constitution requires that every effort be made to see to it that a defendant in a criminal case has not unknowingly relinquished the basic protections that the framers though indispensible at trial).

Exhibit I-19

P.2d 712, 717 (Alaska 1979)(Custodial interrogations generally).

The state will undoubtably argue that federal law holds otherwise, and that the "...mere possiblity that the witness may later be indicted..." furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment when summoned to give testimony before a grand jury, United States v Mandujano, 425 U.S. 564, 570; 96 S.Ct 1768; 48 L.Ed.2d 212 (1976). That a suspects awareness of all the possible subjects of questioning in advance of the interrogation is not relevant to a determination as to whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege, State v Amend, 250 P.3d 541, 543 (Ak App 2011). That the grand jury's broad investigatory powers would trump privilege once a defendant has sought to testify because, even in this context, the right itself must be asserted by the witness if he wishes to stand behind its protections, Mandujano, 425 U.S. at 574-75.

To this McLaughlin would simply point out that these arguments run counter to both common sense and state law on several fronts, the foremost of which is that our Supreme Court has held that the protections of Article I § 9 of our state's constitution are greater than their federal counterparts and work to prohibit the state from seeking excessive pretrial discovery in a criminal proceeding, Scott v State, 519 P.2d 774, 785 (Alaska 1974) re-aff'm by State v Summerville, 948 P.2d 469 (Alaska 1997). Here, McLaughlin simply argues that the state can not attempt to surreptiously use a defense request brought under Cameron to engage in a fishing expedition for evidence it does not already have. That a balance must be struck between the two conflicting circumstances which allows prosecutors to fulfill their duties under Criminal Rule 6(q) in a manner which also protects the rights of the accused under both Cameron and the Fifth, Sixth and Fourteenth Amendments.

Here McLaughlin would contend that the cornerstone of any such reconcillation lies within the basic notice requirements implicated by the Due Process Clause(s)

"EXHIBIT I-20"

of the Fifth and Fourteenth Amendments of the United States constitution and our state corollaries. Common sense and standing state law militate this approach where; (1) notice is required of the government to begin with, (2) in cases that involve a Cameron request the accused has obviously been given notice anyway, (3) in cases involving "trial by ambush", that is when the grand jury is convened secretly, Criminal Rule 6(l)(1) permits disclosure to aid the prosecutor "...in the performance of the prosecuting attorney's duties..." such as the duty to comply with Criminal Rule 6(q), and (4) disclosure of the facts surrounding the allegation to the accused would permit him to make an informed decision concerning whether to waive a significant fundamental right or not at that stage of the proceedings. The logic in these contentions becomes readily apparent when one analyzes the facts in the case at bar.

In this instance, Mclaughlin initially made the Cameron request to testify before the grand jury knowing, based upon the contents of the notice given to him within the initial information, that he possessed alibi information that would explain away the charge. The government for its part did (albeit post-indictment) recognize that McLaughlin's evidence was exculpatory and simply sought to have him subpoenaed without even inquiring of the grand jury, a telling circumstance going to the weight they had given his proposed testimony.[11] However, at that point the government had also changed their allegations causing the defense to withdraw its waiver/request to testify and demand further disclosure. At present, neither the rights afforded the accused under Cameron, nor the prosecutorial duties required by Criminal Rule 6(q) are being served. More importantly, the grand jury function

----------------------

11) The significance of this choice by prosecutors would lead one to believe that they had decided the nature of McLaughlin's exculpatory evidence was such that they were required to present it to the grand jury under both the decision in Cameron and its corollary in Frink, a distinction which is explained more fully in Cameron, 171 P.3d at 1159 n.34.

"EXHIBIT I-21"

as an independent investigative body has now been implicated as well because there is evidence being withheld from them by the prosecution which is relevant to the matter they are investigating.

Clearly, a firmer allegation on the part of the government whom, in this case has already obtained an (albeit defective) indictment, would go a long way towards bringing about reconcillation between the Cameron request procedure and observance of the fundamental rights afforded the accused. At present Mclaughlin enjoys the protections of privilege, yet he is also in possession of evidence of an extremely exculpatory nature that may only be heard by the grand jury if McLaughlin agrees to, and is permitted, to testify. To waive privilege in a constitutionally acceptable manner.

After all, this is no mere custodial police interrogation at the stationhouse, but is a stage in a criminal proceeding where Mclaughlin enjoys the full panolopy of rights afforded one standing accused of a crime.[12] Among them, the rights of full disclosure of evidence material to his defense, Brady v Maryland, 373 U.S. 83, 87; 83 S.Ct 1194; 10 L.Ed.2d 215 (1963)(The suppression by the prosecution of evidence favorable to the accused who requests it violates due process where the evidence is material to either guilt or punishment).

By way of analogy, there can be no disputing that in the context of deciding whether the accused would give sworn testimony at trial they would obviously be entitled to full disclosure so that they could make a knowing, voluntary and intelligent decision. Here, at an earlier stage of the proceedings the accused should, at a minimum, be afforded the level of notice applicable to the grand jury proceedings. That is to say that the accused should be given notice which, "..sets

--------------------

12) Schneckloth v Bustamonte, 412 U.S. at 238, "...The gaurantees afforded a criminal defendant at trial also protect him at certain stages before the actual trial, and any alleged waiver must meet the strict standards of an intentional relinquishment of a known right..."

"EXHIBIT I-22"

forth the elements of the offense charged and contains a statement of facts and circumstances that will inform the accused of the specific offense with which he is charged..," United States v Cecil, 608 F.2d 1294, 1296 (9th Cir 1979), citing; Hamling v United States, 418 U.S. 87, 117-18; 94 S.Ct 2887; 41 L.Ed.2d 590 (1974) (Discussing the minimal notice requirements of an indictment).

In other words, the accused should be provided with a sufficiently detailed account of probable cause to permit him to make the kind of knowing, voluntary and intelligent decision envisioned by the court in Schneckloth as to whether to invoke the procedural rights afforded the accused under Cameron by waiving his rights of privilege or not. Such a requirement is not unlike the system, when it is not being improperly manipulated, that we have in place currently except that; (1) it has the effect of keeping the prosecutors "feet to the fire" where the duty of exculpatory disclosures are concerned, and (2) it would work to alievate variance concerns because it would force prosecutors to disclose prior to even obtaining an indictment exactly what they expected to be able to prove at trial.

In the instant case Mclaughlin is confronted with what is nothing more than a vague and shadowy set of allegations that are not specific as to time, dates, places, or method of commission. A moving target at best, and certainly nothing of such substance that one could reasonably be expected to decided whether or not to waive a significant fundamental right. In fact, the court in Cecil reversed a trial court's decision to let stand just such a charging instrument upon this very same premise, that it simply did not provide adequate notice to the accused of the offense charged, Cecil, 608 F.2d at 1296-97.

Mclaughlin now asserts, based upon the record as a whole, that this court should do the same here. Not only for the failure to comply with Cameron and the provisions of Criminal Rule 6(q), but also because there is a clear lack of sufficiency in the state's quantum of proof overall as well.

EXHIBIT I-23

## CONCLUSIONS AND RELIEF

There are two established criteria for measuring the adequacy of an indictment, "...whether the indictment contains the elements of the offense intended to be charged and sufficiently appraises the defendant of what he must be prepared to meet..., and whether, "...in case any other proceedings are taken against the same defendant for a similar offense the record shows with accuracy to what extent he may plead a formal acquittal or conviction.., State v Semancik, 99 P.3d 538, 540 (Alaska 2004), qouting; Russell v United States, 369 U.S. 749, 763-64; 82 S.Ct 1038; 8 L.Ed.2d 240 (1962); Christie v State, 580 P.2d 310, 321 (Ak 1978)(Accord). Here, the written instrument does neither.

It is a well settled principal that a crime is made up of both acts and intent; and these factors must be set forth in the indictment with reasonable particularity of time, place and circumstance, Russell, 369 U.S. at 765, citing; United States v Cruikshank, 92 S.Ct 542, 558; 23 L.Ed 588 (1876). An equally well settled facet of law is that an indictments language, read in conjunction with the grand jury record, determines the charge with which the accused is indicted, Bowers vs State, 2 P.3d 1215, 1218 (Alaska 2000). However, in this instance, the grand jury record does absolutely nothing to save the written instrument which does not even allege a crime.

The state has also failed in its duty to present exculpatory evidence of to advise the grand jury of McLaughlin's request to testify concerning that evidence as required by state law, Frink v State, 567 P.2d 154, 165 (Alaska 1972), Cameron v State, 171 P.3d 1154, 1159 n.34 (Alaska 2007). These deficiencies are analyzed by determining the prejudice they engendered and what effects they may have had on the proceedings as a whole, Hansen v State, 845 P.2d 449, 457 (Ak App 1993); Joao v State, 491 P.2d 1089, 1090-91 (Haw 1971). Here, where the grand jury record is completely devoid of any evidence that firmly establishes that a crime was even

Exhibit I-24

committed, much less that McLaughlin may be guilty of committing that crime, the procedural errors stand out in the record as glaringly apparent.

The standard of proof at a grand jury proceeding under Alaska law is specified in Criminal Rule 6(q) which provides that, "...[t]he grand jury shall find an indictment when all of the evidence taken together, if unexplained or uncontradited, would warrant a conviction of the defendant..." at trial. The courts in Alaska have construed these provision to mean that the evidence must "....must present a sufficiently detail account of criminal activity and the defendant's participation in this activity..." to meet this standard, Taggard v State, 500 P.2d 238, 242 (Alaska 1972). Again, the state's presentment to the grand jury as a whole does neither and it is upon this premise that McLaughlin seeks a dismissal of Count II for good cause shown.

SUBMITTED this the 24th of August , 2015.

_____
Michael L. McLaughlin
In Properia Persona
Defendant

I CERTIFY that a true and correct copy of this pleading and all its attachments was served by (mail) to Amanda Browning - KDAO on this the 24th of August , 2015.

_____
Michael L. McLaughlin, pro per

HARD COPY VIA COURIER
~michael P. m'l,ll 8/24/15

UPON INFORMATION AND BELIEF UNSIGNED "MEMORANDUM OF FACT AND LAW..." SERVED BY FAX TO KDAO ON 8/21/15 @ 8:00PM
~michael f. m'l,ll 8/24/15

"EXHIBIT I-25"

# TABLE OF FORMER EXHIBITS - EXHBIT I

| "EXHIBIT I" | COMPLAINT |
|---|---|
| EXHIBIT(S)A - PROBABLE CAUSE STATEMENT | SAME |
| EXHIBIT B - "COUNTERFEIT $100 BILL" | APPEARS AS EXHIBIT H-2 |
| EXHIBIT C - RETURN ON SEARCH WARRANT | NOT PROVIDED |
| EXHIBIT D - INDICTMENT | APPEARS AS EXHBIT F |
| EXHIBIT E - GRAND JURY SUBPOENA | APPEARS AS EXHIBIT G |
| EXHIBIT F - DOC "IN AND OUT" SHEET | APPEARS AS EXHIBIT D-1 |

"EXHIBIT I-26"